**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

T.D. BANK, N.A.,

                                                                        **REPORT AND**
                                                                        **RECOMMENDATION**
                                        *Plaintiff*,                    22-CV-02519 (GRB)(JMW)

                -against-


THE FREEPORT PRINCESS, *in rem*,

                                        *Defendant.*

------------------------------------------------------------------------X

**A P P E A R A N C E S:**

Steven Mark Cordero
**Akerman LLP**
1251 Avenue of the Americas
Ste 37th Floor
New York, NY 10020
*Attorney for Plaintiffs*

*No Appearance by Defendant*


**WICKS,** Magistrate Judge:

        Plaintiff, T.D. Bank, N.A. ("T.D. Bank" or "Plaintiff") commenced this *in rem* action

against Defendant, the Freeport Princess (hereafter, "Defendant," "Freeport Princess" or the

"Vessel") on May 3, 2022, seeking to foreclose upon its mortgage on the Freeport Princess after

the Vessel's owner defaulted on the loan. (ECF No. 1.) This Court granted Plaintiff's request to

arrest the Vessel in accordance with the Supplemental Rules for Admiralty or Maritime Claims

and Asset Forfeiture Actions (the "Supplemental Admiralty Rules"), the Freeport Princess was

arrested and placed into Plaintiff's custody on July 25, 2022 (ECF Nos. 6-8, 11, 14), and

subsequently sold at a public auction on February 17, 2023 (the "Interlocutory Sale"). (ECF No.

1

23.) Since then, the Freeport Princess has failed to appear or otherwise defend this action. (ECF No. 29.) Before the Court, on referral from Judge Gary R. Brown, is Plaintiff's Motion for Default Judgment pursuant to Rule 55(b) of the FRCP against the Freeport Princess (ECF No. 30, Electronic Order dated May 25, 2023), seeking foreclosure on the mortgage and distributing the sale proceeds derived from the Interlocutory Sale to Plaintiff, in partial satisfaction of the mortgage. (ECF No. 30-4 at 4.) For the reasons stated herein, the undersigned respectfully recommends Plaintiff's Motion for Default Judgment (ECF No. 30) be **GRANTED**.

## BACKGROUND

### I. Factual Background

The following allegations are drawn from the Complaint. (ECF. No. 1.)  Plaintiff is an American national bank with its headquarters located in Cherry Hill, New Jersey. (*Id.* at ¶ 3). The Freeport Princess is a 106' luxury yacht that is rented out for parties of up to 150 guests.  (*Id.* at ¶ 4.)  The Vessel was docked and anchored at 85 Woodcleft Avenue, Freeport, New York 11520.  (*Id.* at ¶ 15.)

On April 16, 2015, Plaintiff entered into a Loan Agreement with Freeport Cruises, Inc., Med Party Boat, Inc., and Party Boat Central of Freeport, Inc. (collectively the "Borrowers"), whereby Plaintiff provided a business loan of $865,000 (the "First Preferred Ship's Mortgage"). (*Id.* at ¶ 5.)  Attached to the Complaint is a copy of the Loan Agreement (*Id.* at ECF No. 1-3), 9001 Note dated April 16, 2015, made payable to plaintiff for $865,000 (*Id.* at ECF No. 1-4), a copy of the Security Agreement whereby Borrowers declared Freeport Princess as collateral (*Id.* at ECF No. 1-5) as well as a Mortgage Agreement whereby Defendant agreed to secure payment in full of the Note by granting a mortgage to Plaintiff (*Id.* at ECF No. 1-6)  All agreements were signed by Ryan Cooke acting as President of all Borrowers.

2

On or about June 1, 2018, Plaintiff and Borrowers amended the 9001 Note such that payments were modified for a three (3) month period from May 1, 2018 until July 1, 2018. (*Id.* at ¶ 8; *see also* Amendment to Note ECF No. 1-7.) At that point, the outstanding balance on the Note was $603,477.75. (*Id.* at ECF No. 1-7, pg. 4.) Subsequently, Plaintiff filed two UCC Financing Statements publicly noticing its security interest in all assets belonging to Freeport Cruiselines. (*Id.* at ¶ 9; *see also* UCC Financing Statements ECF No. 1-8.) On or about January 2019, Borrowers failed to pay in accordance with the 9001 Note. (*Id.* at ¶ 10.) Plaintiff sent a Notice of Acceleration of Business Loan and Demand for Payment in Full to Borrowers on February 11, 2019. (*Id.*; *see also* Notice of Acceleration ECF No. 1-9.) Plaintiff elected to accelerate all amounts due and owing from Borrowers to Plaintiff and demanded that Borrowers pay the accelerated amounts due to Plaintiff. (*Id.*) Borrowers failed to make payment. (*Id.*)

## II.    **Procedural History**

Plaintiff commenced this action on May 3, 2022, by filing a Verified Complaint to foreclose on its First Preferred Ship's Mortgage. (ECF No. 1.) Plaintiff concurrently filed a Motion to Appoint Custodian to Tranzon Auction Properties ("Tranzon") to seize the vessel (ECF No. 2) and a Motion for Issuance of Arrest for the possession of Freeport Princess. (ECF. No. 3.) This Court granted both motions on May 5, 2022. (ECF No. 6, 7.) Plaintiff then filed a Notice of Action *in rem* and Arrest of Vessel on Freeport Cruiselines, Inc., Vladimir Realty, Inc., and Ryan E. Cooke dated August 2, 2022, and subsequently on Island Wide Marine Agency Inc. and Rachel's Waterside Grill on August 8, 2022. (ECF Nos. 9-10.) On or about July 25, 2022, the United States Marshal executed process and service and arrested Freeport Princess. (ECF No. 11). Plaintiff then filed a Further Notice of Action *in rem* and Arrest of Vessel on September 9,

2022, upon the above-named parties.  (ECF No. 12.)   Additionally, Plaintiff published this action in Newsday on September 8, 2022.  (ECF No. 13.)

On December 15, 2022, Plaintiff filed a motion for interlocutory sale of the Vessel and to place the sales proceeds into escrow pending final adjudication and disposition of this action, as the Vessel was beginning to deteriorate, and claimants' failure to appear thus far.  (ECF No. 15.) This Court granted the motion and ordered for the public sale of the Vessel on January 9, 2023. (ECF No. 17.)  Plaintiff moved for and obtained an Amended Order rescheduling the sale date to February 17, 2023.  (ECF No. 19-22.)  On that date, the Freeport Princess was sold at public auction to Mustafa Kilic on behalf of Cornucopia Cruise Line in the amount of $160,000.  (ECF No. 23.)[1]  Notice of Sale was published in Newsday once a day for six days on the following dates: February 12th, 13th, 14th, 15th, 16th, 17th, 2023.  (*Id.*; *see also* Affidavit of Publication ECF No. 24.) Plaintiff moved to confirm the sale of Defendant on March 6, 2023, and, having received no objections, this Court entered an electronic order confirming the sale on March 7, 2023, whereby the Clerk entered a stamped confirmation on March 27, 2023. (ECF No. 25, 26.)

On April 3, 2023, Plaintiff filed a Request for Certificate of Default against Defendant due to Defendant's failure to appear in this action.  (ECF No. 28.) The Clerk entered certification of the Vessel's default on April 4, 2023. (ECF No. 29.)  Plaintiff now moves for entry of an order: (i) granting default judgment in favor of Plaintiff against the *in rem* Defendant, its masts, boilers, cables, engines, machinery, bowsprits, sails, riggings, bolts, anchors, chains, apparel, furniture, fittings, tools, pumps, equipment, fixtures, supplies, and all other appurtenances, accessors, additions, improvements, and replacements now or hereinafter belonging thereto; (ii)

---

[1] Exhibits submitted by Plaintiff in support of its Motion for Default Judgment reflect that on February 17, 2023, and February 22, 2023, Mustafa Kilic made a payment of $25,00.00 and $135,000.00 for the Vessel, respectively. (ECF Nos. 30-2, 30-3.)

foreclosing upon the First Preferred Ship's Mortgage that Plaintiff holds over the Vessel pursuant to 46 U.S.C. § 31325; (iii) distributing the sale proceeds derived from the interlocutory sale of the Vessel to Plaintiff, in partial satisfaction of the First Preferred Ship's Mortgage; and (iv) granting any other relief the Court deems just and proper. (ECF No. 30.) To date, Defendant has failed to appear or otherwise defend this action. (ECF No. 29.)

## LEGAL STANDARD

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b). The decision to grant a motion for default is left to the sound discretion of the district court. *No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 2-1CV-4755 (AMD)(JMW), 2022 WL 18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023).

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). "Where damages are susceptible to simple mathematical calculation and the plaintiff provides a 'sufficient basis from which to evaluate the fairness' of the requested damages, no evidentiary

5

hearing is necessary." *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410 (VM), 2018 WL 1596192, at \*5 (S.D.N.Y. Mar. 28, 2018) (quoting *Am. Jewish Comm.*, 2016 WL 3365313, at \*4).

However, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The Court must therefore ensure: (i) Plaintiffs satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; (ii) Plaintiffs' allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84; and (iii) Plaintiffs' request for damages is adequately supported.

## DISCUSSION

### I.    Procedural Compliance

Local Civil Rule 7.1 requires default judgment motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1)-(3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application the Clerk's certificate of default, a copy of the claim to which no response has been made (*i.e.*, the Complaint), a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party with proof of mailing filed with the Court. E.D.N.Y. Local R. 55.2(b)-(c); *Woodway USA, Inc. v. Speedfit LLC*, No. 22CV2455EKRER, 2023 WL 2969334, at \*6

6

(E.D.N.Y. Feb. 2, 2023) (quoting Local Civ. R. 55.2(b)) ("As an initial matter, Local Rule 55.2(b) requires a party seeking default judgment to 'append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment.'"). "A motion for default judgment may be denied if the movant fails to follow all applicable procedural rules." *See Woodway USA, Inc.* v., 2023 WL 2969334, at *6 (collecting cases); *United States v. Hamilton*, No. 18-CV-2011 (ADS) (SIL), 2019 WL 6830318, at *2 (E.D.N.Y. Nov. 26, 2019), *adopted by* 2019 WL 6828276 (Dec. 13, 2019) ("[C]ourts in the Eastern and Southern Districts regularly deny motions [for default judgment] when strict procedural compliance is lacking.").

In asset forfeiture actions involving admiralty or maritime claims, the Court must additionally ensure Plaintiff complied with the Local and Supplemental Admiralty Rules before granting default in favor of Plaintiff. *See e.g., US All. Fed. Credit Union v. M/V Kamara Fam.*, No. 20CV1733 (AMD)(SJB), 2023 WL 5622067, at *5 (E.D.N.Y. Aug. 31, 2023). Local Admiralty Rule C.3 and Supplemental Rule C(4) require Plaintiff "to comply with procedural safeguards that ensure notice of the [action and the Interlocutory] sale [of the vessel was given] to anyone who may have an interest in the vessel." *JP Morgan Chase Bank, N.A. v. M/Y FORTUNA*, No. 11-CV-2514, 2013 WL 1148920, at *5 (E.D.N.Y. Feb. 12, 2013), *report and recommendation adopted*, 2013 WL 1195420, at *1–*2 (Mar. 20, 2013). Specifically, Local Admiralty Rule C.3 provides that "[a] party seeking a default judgment in an action *in rem* must satisfy the court that due notice of the action and arrest of the property" was given:

> [T]o (1) the custodian of the Vessel; (2) 'every other person who has not appeared in the action and is known to have an interest in the property'; (3) for vessels documented under U.S. law, all other persons identified by the U.S. Coast Guard 'as holding an ownership interest in or as holding a lien in or as having filed a notice of claim of lien with respect to the vessel'; (4) for numbered vessels, all 'persons named in the records of the issuing

authority'; and (5) if there exists a government registry of recorded interests in the vessel, to all other persons with recorded interests named in such registries.

*US All. Fed. Credit Union*, No. 20CV1733 (AMD)(SJB), 2023 WL 5622067, at *5 (quoting Loc. Admiralty & Mar. R. C.3(a)(3), (b)(1), (3) (mandating notice pursuant to Federal Rule of Civil Procedure 5(b) "upon every other person who has not appeared in the action and is known to have an interest in the property"); *see also* Fed. R. Civ. P. 5(b)(2)(C) (authorizing service by mail to a person's last known address).

Supplemental Rule C(4) "requires a plaintiff to 'promptly give public notice of the action and arrest in a newspaper designated by court order and having general circulation in the district.'" *US All. Fed. Credit Union*, No. 20CV1733AMDSJB, 2023 WL 5622067, at *5 (quoting Fed. R. Civ. P. Supp. Rules for Admiralty or Mar. Claims & Asset Forfeiture Actions C(4)). Pursuant to Local Admiralty Rule C.2, notice of the action and arrest should include:

> (1) the fact and date of the arrest, (2) the caption of the case, (3) the nature of the action, (4) the amount demanded, (5) the name of the marshal, (6) the name, address, and telephone number of the attorney for the plaintiff, and (7) a statement that claimants must file their claims with the clerk of this court within fourteen (14) days after notice or first publication (whichever is earlier) or within such additional time as may be allowed by the court and must serve their answers within twenty one (21) days after the filing of their claims. The notice shall also state that all interested persons should file claims and answers within the times so fixed otherwise default will be noted and condemnation ordered.

Loc. Admiralty & Mar. R. C.2(a); *see also C*.3(a)(1)( "A party seeking a default judgment in an action *in rem* must satisfy the court that due notice of the action and arrest of the property has been given "[b]y publication as required in Supplemental Rule C(4) and Local Admiralty Rule C.2").

*Preliminarily*, the undersigned finds Plaintiff's Motion for Default Judgment does not comply with Local Civil Rules 7.1 and 55.2. In support of its Motion for Default Judgment, Plaintiff filed: (i) a Notice of Motion (ECF No. 30), (ii) a Declaration of Steven M. Cordero,

Esq.[2] (ECF No. 30-1), (ii) proof of the Interlocutory Sale (Exhibits 1 & 2) (ECF Nos. 30-2, 30-3), (iii) a Memorandum of Law (ECF No. 30-4), (iv) a Proposed Order for Default Judgment (ECF No. 30-5), and (v) and Affidavit of Service reflecting service of the Motion to Freeport Cruiselines, Inc., Ryan E. Cooke, Rachel's Waterside Grill, Vladimir Realty, Inc., and Island Wide Marine Agency Inc. (ECF No. 30-6.)

Plaintiff failed to append to its application the Clerk's certificate of default, and a copy of the claim to which no response has been made (*i.e.*, the Complaint), in compliance with Local Rule 55.2(b), and likewise failed to serve those documents upon Defendant in compliance with Local Rule 55.2(c). *Bhagwat v. Queens Carpet Mall, Inc*., No. 14CV5474 (ENV)(PK), 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015) (collecting cases) ("The fact that some of these items may be found electronically, scattered on the docket, does not absolve a movants of the obligation to collect and append copies to the moving papers."); *Yoon v. Toothsavers Dental Lab'y, Inc.,* No. 19-CV-2283 (ERK) (VMS), 2020 WL 13580466, at *8 (E.D.N.Y. June 22, 2020) ("It is not enough that the complaint or Clerk's certificate of default can be found interspersed throughout the docket."); *Woodway USA, Inc.*, No. 22CV2455EKRER, 2023 WL 2969334, at *7 (internal citations omitted) ("Courts in this District strictly construe these requirements and have found that a movant's failure to comply with Local Rule 55.2(c) warrants denial of the motion for default judgment."). Accordingly, the undersigned recommends this Court grant Plaintiff's Motion for Default Judgment, on the condition that Plaintiff complies with Local Rule 55.2. *See Woodway USA, Inc*., No. 22CV2455EKRER, 2023 WL 2969334, at *7 (finding plaintiff's motion did not comply with Local Rule 55.2 when plaintiff

---

[2] A declaration "in writing, subscribed and certified or declared to be true under penalty of perjury," as offered here, suffices in place of an affidavit. 28 U.S.C. § 1746.

failed to append a copy of the Clerk's certificate of default and a copy of the claim to which no response had been made).

By contrast, the undersigned finds Plaintiff complied with the Local and Supplemental Admiralty Rules before filing for default against Defendant. *First*, following the filing of the Complaint on May 3, 2022, the United States Marshal executed process and service and arrested the Vessel. *See* ECF No. 11 ("SUMMONS Returned Executed by T.D. Bank, N.A. The Freeport Princess served on 7/26/2022, answer due 8/16/2022"). *Second*, Plaintiff served the Vessel owner, Freeport Cruiselines, Inc., its president, Ryan Cooke, and the owner and operator of the dock at which the Vessel is moored, Vladimir Realty, Inc., and the other lienholders of record – Island Wide Marine Agency Inc. and Rachel's Waterside Grill – with Notices of Action *in rem* and Arrest of Vessel sent by U.S. Mail to each of the recipients' last-known addresses twice, on August 8, 2022 and September 9, 2022. (ECF Nos. 9, 10.) *Third*, on September 15, 2022 and September 22, 2022, notice of the action and arrest of the Vessel was published in *Newsday*, a daily newspaper of general circulation in the district, in accordance with Admiralty Rule C(4) and Local Admiralty Rules C.2 and C.3. (ECF No. 13.)

*Fourth*, following the Interlocutory Sale, in accordance with Admiralty Rule C(4) and Local Admiralty Rules C.2 and C.3, Plaintiff caused a Notice of Vessel Sale by U.S. Marshal to be published in *Newsday*, for six days preceding the sale. (ECF No. 24.) Plaintiff additionally served Notice of Vessel Sale served by mail upon the Vessel's owner, its president, Ryan Cooke, the owners and operators of the dock at which the Vessel is moored, and the other lienholders of record at each of their last known addresses. (ECF No. 22.) Notwithstanding this notice and service, neither Defendant nor any other parties or prospective claimants have appeared in these proceedings, nor otherwise noticed or asserted any claims against the Vessel. (ECF No. 30-4 at

10.) Accordingly, the undersigned concludes that Plaintiff complied with Local and Supplemental Admiralty Rules such that its Motion for Default should be granted pending compliance with Local Civil Rule 55.2. *See US All. Fed. Credit Union*., No. 20CV1733AMDSJB, 2023 WL 5622067, at *6 (granting plaintiff's motion for default where plaintiff provided notice of the action and the arrest and subsequent sale of the vessel to the vessel itself and the vessel's owner, in compliance with Local Admiralty Rule C.3 and Supplemental Rule C(4), and where defendants "did not respond to the Amended Complaint and [had] not in any way attempted to defend [the] action.").[3]

## II.    **Default Judgment Factors**

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). *But see Brown v. Gabbidon*, No. 06-CIV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default

---

[3] The undersigned notes that Servicemembers Civil Relief Act, 50 U.S.C. App.§ 521 ("SCRA") additionally requires Plaintiff to file with the Court "an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD)(JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). However, the SCRA is inapplicable as to the Freeport Princess. *See Guanglei Jiao v. Shang Shang Qian Inc*., No. 18-CIV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants).

judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors favors entry of default judgment where, as here, Defendant has wholly failed to appear and present any sort of defense, and Plaintiff is left with no further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4; *see also Flooring Experts*, *Inc*., 2013 WL 4042357, at *3 (when a defendant is continuously and completely unresponsive the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted). Accordingly, as all three factors weight in favor of the entry of default judgment, the undersigned "turns to the liability imposed, damages, and other relief to be awarded." *US All. Fed. Credit Union*, No. 20CV1733AMDSJB, 2023 WL 5622067, at *6.

III.    **Liability and Damages**

A. **Liability**

"The determination of a deficiency judgment and judicial sale procedures in a maritime lien case are governed by federal law." *JP Morgan Chase Bank, N.A. v. M/Y FORTUNA*, No. CV

11-2514 (JS)(GRB), 2013 WL 1148920, at *5 (E.D.N.Y. Feb. 12, 2013), *report and recommendation adopted*, No. 11-CV-2514 JS GRB, 2013 WL 1195420 (E.D.N.Y. Mar. 20, 2013). "The Ship Mortgage Act, when read together with the statutes delineating the judicial sale procedure in the federal courts forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *in personam*." *Id*. (quoting *Walter E. Heller & Co. v. O/S Sonny V*., 595 F.2d 968, 971 (5th Cir. 1979)).

Plaintiff asserts only an *in rem* claim against the Vessel under the Maritimes Liens Act ("CIMLA") (ECF No. 30-4 at 4).  Pursuant to the CIMLA, a "preferred mortgage" creates a maritime lien against a mortgaged vessel. 46 U.S.C. § 31325(a). "A maritime lien is a special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim, which arises when the debt arises." *ING Bank N.V. v. M/V TEMARA*, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018) (quotations and alteration omitted). "A preferred mortgage is one that has been filed 'in substantial compliance with section 31321'" of the CIMLA, *Maryland Nat'l Bank v. Yacht Escape II*, 817 F. Supp. 1, 1 (E.D.N.Y. 1993) (quoting 46 U.S.C. § 31322(a)(1)(B)), "a provision that contains a number of recording and filing requirements." *US All. Fed. Credit Union*, No. 20CV1733AMDSJB, 2023 WL 5622067, at *6. Section 31321 provides that a mortgage must be filed with the U.S. Coast Guard at the vessel's home port to be valid. 46 U.S.C. § 31321(a)(1). In addition, to be validly recorded, the mortgage must:

> (1) identify the vessel; (2) state the name and address of each party to the instrument; (3) state ... the amount of the direct or contingent obligations ... that is or may become secured by the mortgage, excluding interest, expenses, and fees; (4) state the interest of the grantor, mortgagor, or assignor in the vessel; (5) state the interest sold, conveyed, mortgaged, or assigned; and (6) be signed and acknowledged.

13

46 U.S.C. § 31321(b).

Here, the undersigned finds the mortgage at issue here is a "preferred mortgage" because it: (i) identifies the "mortgaged vessel" as "Freeport Princess," and includes its hull number and port of documentation; (ii) identifies Freeport Cruiselines Inc. as the mortgagor and T.D. Bank N.A. as the mortgagee, and lists their addresses; (iii) identifies the total amount of the mortgage as $865,000; (iv) identifies Freeport Cruiselines, Inc. as the owner of the Vessel; (v) grants T.D. Bank N.A. a mortgage covering "the whole of the boat named above[;]" and (vi) is signed by Ryan Cooke as president of Freeport Cruiselines and properly acknowledged by a notary public. (ECF No. 1-5 at 2.) Additionally, T.D. Bank properly filed the Mortgage with the U.S. Coast Guard National Vessel Documentation Center. (*Id*.). *See Midlantic Nat. Bank v. Sheldon*, 751 F. Supp. 26, 28 (E.D.N.Y. 1990) ("A creditor obtains a 'preferred mortgage' under federal maritime law, 42 U.S.C. § 31322, if the mortgage (1) includes the whole of the vessel, (2) covers a documented vessel, (3) has as the mortgagee a federally insured depository institution, and (4) is filed in substantial compliance with section 31321.").

Where, as here, a Defendant has defaulted on a preferred mortgage, a mortgagee, like T.D. Bank, may enforce the claim against the secured vessel. *See* 46 U.S.C. § 31325(b)(1); *Midlantic Nat. Bank*, 751 F. Supp. at 29 ("Section 31326(a) provides that a district court may order a vessel sold in an *in rem* action to enforce a preferred mortgage lien and that any claim in the vessel existing on the date of sale is terminated"). "Such an action is filed *in rem* against the vessel, and recovery is limited to the value of the vessel." *US All. Fed. Credit Union*, No. 20CV1733AMDSJB, 2023 WL 5622067, at *7 (citing *Bay Casino, LLC. v. M/V Royal Empress*, 20 F. Supp. 2d 440, 447–48 (E.D.N.Y. 1998)). Accordingly, by way of Freeport Cruiselines, Inc.'s default on the note and mortgage, Plaintiff "has established that it may enforce the

[m]ortgage in rem against the Vessel." *US All. Fed. Credit Union*, No. 20CV1733 (AMD)(SJB), 2023 WL 5622067, at *7; 46 U.S.C. § 31325(b) ("On default of any term of the preferred mortgage, the mortgagee may ... enforce the preferred mortgage lien in a civil action in rem[.]"); *JP Morgan Chase Bank, N.A.*, No. CV 11-2514 JS GRB, 2013 WL 1148920, at *6 (holding default under the terms of the mortgage established liability on the mortgage *in rem* as a matter of law).

### B. <u>Damages</u>

As the Court has determined Defendant's liability, the undersigned now turns to the damages to be awarded. *See Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012) ( While "the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded."); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)) ("The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty.") If the plaintiff "fails to demonstrate its damages to a reasonable certainty" on a damages inquest, the Court "should decline to award any damages, even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages, "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also Sec'y of U.S. Dep't of Hous. & Urb. Dev. v.*

*Gilbert*, No. 20-CV-1441, 2022 WL 344270, at *3 (N.D.N.Y. Feb. 4, 2022) ("A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate the proposed sum and determine an award of damages.").

In support of its Motion for Default Judgment, Plaintiff claims it is entitled to "the amount due and owing under the 9001 Note and the First Preferred Ship's Mortgage, and the proceeds of the Vessel's sale, being less than the Borrowers' outstanding debt." (ECF No. 30-4 at 13.) Specifically, Plaintiff claims the total amount to pay the note and mortgage in full is $780,420.97, including: (i) a principal balance in the amount of $596,525.85; (ii) outstanding interest accrued through November 8, 2022, in the amount of $130,277.97; (iii) outstanding late fees accrued through November 8, 2022 in the amount of $12,764.26; (iv) property appraisals in the amount of $2,976.16; (v) environmental and other professional assessments in the amount of $33,760.44; (vi) property maintenance, utilities, and management in the amount of $3,745.79; and (vii) other fees (UCC etc.) in the amount of $370.50. (ECF No. 30-4 at 6-7.)

Plaintiff claims the alleged damages are supported by the Declaration of Ellen R. Ferrara, Vice President, SBA Workout Department of TD Bank, N.A., filed in support of Plaintiff's earlier motion seeking interlocutory sale of the Vessel pursuant Admiralty Rule E(9) (ECF No. 15-1), the Verified Complaint and its exhibits (ECF No. 1), and Ms. Ferrara's authentication and verification of the same. (ECF No. 30-4 at 12.) Plaintiff further claims that "Ms. Ferrara's declaration of November 8, 2022, established that, as of that date, Borrowers owed at least $780,420.97 – well in excess of the $160,000.00 in proceeds derived from the interlocutory sale of the Vessel." (*Id.*; ECF No. 15-1.)

As of November 8, 2022, the remaining principal of the Mortgage and Note was $596,525.85. With respect to interest, Plaintiff alleges that the total accrued interest as of

November 8, 2022, was $130,277.97. According to the terms of the Loan, the *per diem* interest rate at the time of default, on February 11, 2019, was $95.60. (ECF No. 1-9.) Since there are 1,366 days between February 11, 2019—the date of default—and November 8, 2022, the Court calculates the total interest as $130,589.60. *See e.g.*, *US All. Fed. Credit Union*, No. 20CV1733AMDSJB, 2023 WL 5622067, at *8.  Plaintiff additionally seeks late fees of $12,764.26. Plaintiff fails to make clear how it arrived at this total in its motion papers. However, the executed note provides that "if payment is more than 15 days late, the lender may charge the borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment." (ECF No. 1-4 at 4.) The Note requires regularly scheduled monthly payments in the amount of $7,566.96, and therefore, at maximum the late fee per month would be $378.35. (*Id*.)  From February 2019 to November 2022 there are approximately 45 months, equating maximum late fees and the total late charges owed to $17,025.75.  The sum of these three individual components as of November 8, 2022—principal, accrued interest, and late charges—is $744,141.20. *See e.g.*, *US All. Fed. Credit Union*, No. 20CV1733AMDSJB, 2023 WL 5622067, at *9.

As for other costs, Plaintiff seeks to recover property appraisals in the amount of $2,976.16, environmental and other professional assessments in the amount of $33,760.44, property maintenance, utilities, and management in the amount of $3,745.79, and "other fees (UCC etc.)" in the amount of $370.50. However, Plaintiff "provides no case authority or argument regarding the recovery of [these] costs." *US All. Fed. Credit Union v. M/V Kamara Fam.*, No. 20-CV-1733 (AMD)(SJB), 2022 WL 607048, at *3 (E.D.N.Y. Feb. 8, 2022), *report and recommendation adopted*, No. 20CV1733(AMD)(SJB), 2022 WL 603933 (E.D.N.Y. Mar. 1, 2022). While the note "may provide for such recovery," that alone "is insufficient for the Court

to impose judgment . . . [s]ome legal analysis is required." *Id.* ("A maritime lien only extends to 'necessaries,' and that defines the limit of the judgment that can be imposed *in rem*."); *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 780 F. Supp. 191, 193 (S.D.N.Y. 1991) ("[T]he Lien Act only protects those who 'furnish' supplies, repairs or other 'necessaries.'"); *see also* 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3:10 n. 43 (6th ed. 2021) (internal quotations omitted) ("The Federal Maritime Lien Act, 46 U.S.C. at § 31342, authorizes an *in rem* admiralty action in favor of a person furnishing necessaries to any vessel." But, "executory contracts and anticipatory breaches may be enforced only *in personam*.") In other words, if Plaintiff's claimed cost indeed "necessaries," then they can be recovered *in rem*, however, Plaintiff "does not include even a cursory analysis to explain whether the costs are necessaries and can therefore be included in the *in rem* judgment, or whether they can only be recovered under the Note." *US All. Fed. Credit Union*, No. 20-CV-1733-AMD-SJB, 2022 WL 607048, at *3.

Additionally, Plaintiff failed to "establish the amounts with the requisite certainty by providing invoices itemizing the amounts it is owed" in support of its Motion for Default Judgment. *Garpo Marine Servs. Inc. v. Island Romance*, No. 19-CV-6875-EK-SJB, 2021 WL 6805890, at *9 (E.D.N.Y. Sept. 30, 2021), *report and recommendation adopted*, No. 19-CV-6875(EK)(SJB), 2022 WL 341194 (E.D.N.Y. Feb. 4, 2022); *C.f. Billybey Marina Servs., LLC v. Affairs Afloat, Inc.*, No. 14-CV-6722, 2016 WL 1266608, at *4 (E.D.N.Y. Mar. 11, 2016) (recommending breach of maritime contract damages on default based on invoices provided by plaintiff), *report and recommendation adopted*, 2016 WL 1271479 (Mar. 30, 2016). Accordingly, the undersigned recommends Plaintiff's requests for these costs be denied. *See e.g,* *US All. Fed. Credit Union*, No. 20CV1733AMDSJB, 2023 WL 5622067, at *13 (denying request for Marshals' fees, publishing fees for the Notice of Arrest, abstract of title fees, and

18

substitute custodian and storage fees where Plaintiff did not provide legal analysis supporting an award for those costs).

## **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment be granted, ***but only on the condition that Plaintiff complies with Local Rule 55.2***, and that judgment be entered against the Freeport Princess *in rem* in the amount of $744,141.20, less the proceeds from the Interlocutory Sale[4] of $160,000.00, for the total amount of $584,141.20.

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendants via first-class mail and via email and promptly file proof of service on ECF within two business days. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District

---

[4] A judicial sale will extinguish the *in rem* liability of the [vessel]." *Garpo Marine Servs.*, 2021 WL 6805890, at \*8; *Bank of the W. v. Sailing Yacht Serendipity*, 101 F. Supp. 3d 238, 254–55 (E.D.N.Y. 2015) (entering default judgment against Defendant and directing the United States Marshal to sell the vessel and release the proceeds from the sale to the Plaintiff, and noting "if the sale d[id] not satisfy the $311,186.11 judgment, then the Plaintiff is entitled to a final judgment against the Defendant for the amount of any deficiency remaining after a judicial sale" of the vessel.)

Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:      Central Islip, New York
            February 12, 2024

                                        RESPECTFULLY RECOMMENDED,

                                        /S/ *James M. Wicks*

                                        JAMES M. WICKS
                                        United States Magistrate Judge